427 S.E.2d 474

**STATE of West Virginia, Appellee,**

v.

**Susan A. CARRICO, Appellant.**

**No. 21299.**

Supreme Court of Appeals
of West Virginia.

Submitted Jan. 13, 1993.

Decided Feb. 11, 1993.

Mario J. Palumbo, Michael J. Basile, Office of Atty. Gen., Charleston, for appellee.

George A. Stolze, Huntington, for appellant.

NEELY, Justice:

Early in the morning of 17 December 1985 the house that Susan Carrico, appellant, had lived in with her children suffered extensive fire damage. The fire chief who responded to the fire, as well as the investigator hired by the insurance company, concluded that the fire was "suspicious". The

fire had started in the upper portions of the furnace, not in the burning element. Furthermore, there were additional points of origin upstairs that were not connected with the furnace. However, the sheriff's department had little information as to who set the fire, and determined that there was not enough evidence to proceed against any person at that time.

In April, 1988, Sheriff's Deputy Jim Scheidler discovered that appellant's son had bragged to two of his friends, John David Miller and Michael Ray Nimmo, about setting the fire at the behest of his mother, the Appellant. At this point, Deputy Scheidler felt he had enough evidence to prosecute appellant successfully, and turned the case over to the prosecutor. The State brought the matter before the grand jury, and the grand jury indicted appellant for first degree arson under *W. Va. Code* 61–3–1 [1935] on 5 May 1988. The case was docketed for trial on 31 August 1988. The Court granted two continuances of the case on motions by the prosecution and one continuance on joint motion. Trial, then, was scheduled for 15 March 1989. At that time, the circuit court refused to grant another continuance to the state when the state advised the court that crucial photographic evidence had been misplaced, but the court did allow the state to *nolle prosequi* the charges without prejudice. On 5 May 1989, at the next term of court, appellant was re-indicted on the arson charge and charged with the additional offense of burning insured property under *W. Va. Code* 61–3–5 [1935]. In August, 1989, a jury trial was held, and appellant was convicted on both counts.

Appellant now appeals alleging several errors: prejudicial pre-indictment delay; prejudicial post-indictment delay; improper admission of prejudicial hearsay testimony; improper cross-examination of the appellant; improper denial of appellant's motion for a directed verdict; and cumulative error. We find no error and affirm.

## I.

■ West Virginia has no statute of limitations affecting felony prosecutions.

Despite this fact, appellant claims that the two year delay between the time of the arson, 17 December 1985, and the time of the first indictment, 5 May 1988, violated her constitutional rights to due process. *See United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752, *reh'g denied,* 434 U.S. 881, 98 S.Ct. 242, 54 L.Ed.2d 164 (1977); *Dickey v. Florida,* 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970); *State ex rel. Leonard v. Hey,* — W.Va. —, 269 S.E.2d 394 (1980). However:

> There is no constitutional right to be arrested. The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and a violation of the Sixth Amendment if they wait too long. Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction.

*Hoffa v. United States,* 385 U.S. 293, 310, 87 S.Ct. 408, 417, 17 L.Ed.2d 374 (1966), *reh'g denied,* 386 U.S. 940, 87 S.Ct. 970, 17 L.Ed.2d 880 (1967). Immediately after the fire, the sheriff did not have the evidence necessary to link appellant to the fire conclusively. There were several possible suspects, none of which at the time clearly stood out over the others.

Two years after the fire, however, two friends of appellant's son came forward to the authorities and discussed the son's admissions to them that he assisted his mother in setting fire to their house. At that point, the prosecutors had the evidence necessary to prosecute appellant, and quickly proceeded to obtain an indictment.

■ As we held in *State ex rel. Leonard v. Hey:*

> It is the government's duty to proceed with reasonable diligence in its investigation and preparation for arrest, indictment and trial. If it fails to do so after discovering sufficient facts to justify in-

dictment and trial, it violates this due process right.

—— W.Va. ——, ——, 269 S.E.2d 394, 398 (1980). In this case, as soon as the government obtained enough evidence to justify indictment and trial, the prosecution promptly obtained an indictment. Consequently the pre-indictment delay did not violate the due process rights of appellant.

## II.

■ Once an indictment has been returned against a defendant, "[i]t is the three-term rule, *W.Va.Code*, 62–3–21 [1959], which constitutes the legislative pronouncement of our speedy trial standard under Article III, Section 14 of the West Virginia *Constitution.*" Syl. Pt. 1, *Good v. Handlan*, 176 W.Va. 145, 342 S.E.2d 111 (1986).[1] However, in other cases discussing the right to a speedy trial we have focused on the standards enunciated in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972):

A determination of whether a defendant has been denied a trial without unreasonable delay requires consideration of four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his rights; and (4) prejudice to the defendant. The balancing of the conduct of the defendant against the conduct of the State should be made on a case-by-case basis and no one factor is either necessary or sufficient to support a finding that the defendant has been denied a speedy trial.

Syl. pt. 2, *State v. Foddrell*, 171 W.Va. 54, 297 S.E.2d 829 (1982).

■ It is clear that West Virginia is free to adopt protections of its own, so long as West Virginia does not diminish federal rights. *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *State ex rel. McLendon v. Morton*, 162 W.Va. 431, 249 S.E.2d 919 (1978). *W.Va. Constitu-*

*tion*, Art. III, § 14 and the sections of the *W.Va.Code*, namely 62–3–21 [1959] and 62–3–1 [1981] meet or exceed the *Barker* standards on every prong: the three-term rule, *W.Va.Code* 62–3–21 [1959] provides that a post-indictment delay cannot be much longer than a year without an act on the defendant's part to extend the term between indictment and trial (under the *Barker* test, much longer periods have been upheld as constitutional); the three-term rule operates no matter whether the defendant asks for a trial (as opposed to the *Barker* standard where such a request is an important consideration); the "one-term" rule of *W.Va.Code* 62–3–1 [1981][2] prevents extreme prejudice against a defendant for delay, for if an event that may cause prejudice is impending and the defendant *moves* for a trial within one term of court, the prosecution will need to show a high level of "good cause" to persuade the court to continue the case. West Virginia's panoply of speedy trial protections guarantee defendants more rights across the board than the balancing factors of the *Barker* test.

Accordingly, if a conviction is validly obtained within the three-term rule, *W.Va. Code* 62–3–21 [1959], then that conviction is presumptively constitutional under the speedy trial right guaranteed by the *Constitution of the United States*, Amendment VI, and *W.Va. Constitution*, Article III, § 14.

■ In this case, appellant was initially indicted on 5 May 1988, just after the beginning of the May term of court in Cabell County. When counting terms for purposes of the three-term rule, the term in which the defendant is indicted is not counted as one of the three terms. As we held in syl. pt. 1, *State ex rel. Smith v. DeBerry*, 146 W.Va. 534, 120 S.E.2d 504 (1961):

The three regular terms of a court essential to the right of a defendant to be

---

1. *W.Va.Code*, 62–3–21 [1959], requires that a defendant be tried within three regular terms of court after she is indicted or that defendant shall be permanently discharged from the offenses she is accused of.

2. *W.Va.Code* 62–3–1 [1981] provides, in part:

When an indictment is found in any county, against a person for a felony or misdemeanor, the accused, if in custody, or if he appear in discharge of his recognizance, or voluntarily, shall, unless good cause be shown for a continuance, be tried at the same term.

discharged from further prosecution, pursuant to provisions of the *Code,* 62–3–21, as amended, are regular terms occuring [sic] subsequent to the ending of the term at which the indictment against him is found. The term at which the indictment is returned is not to be counted in favor of the discharge of a defendant. No trial was held during the rest of that May term nor during the September term of court; the prosecution requested several continuances during those terms. On 15 March 1989, the circuit court refused to grant another continuance and allowed the prosecution to *nolle prosequi* without prejudice.

■ Although we have long held that the prosecution may not use a *nolle prosequi* to evade the three-term rule, *State v. Crawford,* 83 W.Va. 556, 98 S.E. 615 (1919), the prosecution is entitled to reindict after a *nolle prosequi* if the prosecution can conduct the trial within the constraints of the three-term rule. On 5 May 1989, a grand jury indicted appellant on two counts (arson and burning insured property). The trial began on 9 August 1989, the third term of court after defendant's initial indictment. Therefore, appellant was given a speedy trial under the guarantees of both the *Constitution of the State of West Virginia* and the *Constitution of the United States.*

### III.

Appellant asserts that testimony which implicated appellant, provided by John David Miller, Michael Ray Nimmo, and John Carrico (appellant's son) at trial, was inadmissible hearsay and should have been excluded by the trial court. However, that testimony was not inadmissible hearsay under Rule 613 and Rule 801(d)(2) of the *West Virginia Rules of Evidence.*[3]

■ During the prosecution's case, Mr. Miller testified about an admission adopted by appellant in his presence. Appellant was present at one instance when John Carrico told Mr. Miller that he was going to set the house on fire at his mother's behest. Mr. Miller testified that appellant then affirmed that was the plan. Such an affirmation is admissible under Rule 801(d)(2)(B) as an adopted admission by a party-opponent; therefore, by definition, that statement is not hearsay and is admissible as substantive evidence.[4]

■ The other class of statements appellant claims were improperly admitted hearsay are statements made by John Carrico to Mr. Miller and Mr. Nimmo both before and after the fire about his plan, at his mothers behest, to burn the house down and collect the insurance proceeds. These statements were admitted only after John Carrico was asked about them and was

---

**3.** Rule 801(d)(2) provides:

(d) *Statements Which are not Hearsay.*—A statement is not hearsay if—

(2) Admission by Party–Opponent.—The statement is offered against a party and is (A) his own statement, in either his individual or representative capacity, or (B) a statement of which he has manifested his adoption or belief in its truth, or (C) a statement by a person authorized by him to make a statement concerning the subject, (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

Rule 613(b) provides:

*Extrinsic Evidence of Prior Inconsistent Statement of Witness.*—Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).

**4.** Furthermore, the rule makes good practical sense:

"The theory underlying this evidentiary rule is that if a person's own statements are offered against him, he cannot be heard to complain that he was denied an opportunity for cross-examination. An additional justification supporting the admissibility of this class of evidence is the fact that it is inherently trustworthy. [citation omitted] Presumably, a party would not admit or state anything against his or her interest unless it was true; nevertheless, if the statement is inaccurate, the party may deny it altogether or explain why she made it."

*Heydinger v. Adkins,* 178 W.Va. 463, 468, 360 S.E.2d 240, 245 (1987).

offered a chance to admit to them, explain them, or deny them.

■ Three criteria must be met before evidence of a witness' prior statement may be admitted under Rule 613(b) of the *West Virginia Rules of Evidence* to impeach the witness' trial testimony:

(1) The statement must be a prior inconsistent statement of the witness; (2) The witness must be afforded an opportunity to explain or deny having made the statement; and (3) The opposing party must be afforded an opportunity to interrogate the witness concerning the statement.

Syl. pt. 10, *State v. James Edward S.,* 184 W.Va. 408, 400 S.E.2d 843 (1990).

All three criteria were met in this case. John Carrico was placed on the stand and asked about the various statements he was alleged to have made bragging about burning the house down in complicity with his mother. His explanations of several statements were not consistent with the statements made to Mr. Miller and Mr. Nimmo, so impeaching the testimony was appropriate. The defense had a full and fair opportunity to cross-examine Mr. Miller and Mr. Nimmo, and the defense took full advantage of that opportunity. Furthermore, the circuit court gave the defendant's instruction regarding the purposes of impeachment testimony regarding prior inconsistent statements.

The circuit court, therefore, did not err in allowing either class of testimony to be presented.

### IV.

There is likewise no error on the remaining three assignments: improper cross-examination of the defendant, improper denial of defendant's motion for a directed verdict, and cumulative error.

### A.

■ On cross-examination of appellant, the prosecution introduced evidence of appellant's fraudulently inflated insurance claim after the fire. Appellant now assigns error, claiming that the introduction of that evidence was improper.

Rule 404(b) of the *West Virginia Rules of Evidence* provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

Here, evidence of appellant's misrepresentation of the value of the assets lost in the fire was not brought out to show that appellant had a bad character, but was brought out to show several aspects of the crime: (1) she had prepared for the crime by removing assets normally found in the house; (2) she had a motive to burn her house in order to collect the insurance proceeds; and (3) she had planned the fire in advance. That evidence is clearly admissible under Rule 404(b) and, therefore, the circuit court committed no error in allowing it to be introduced in the cross-examination of the appellant.

### B.

■ Appellant asserts that her motion for a directed verdict was improperly denied for two reasons: the case against her was wholly circumstantial and the witnesses against her were not credible. There is no merit to either claim. First, a case may be based wholly on circumstantial evidence if the evidence as to time, place, motive, means and conduct points to a defendant. Syl. pt. 3, *State v. Gum,* 172 W.Va. 534, 309 S.E.2d 32 (1983). In this case, the evidence clearly pointed to arson; the statements of John Carrico pointed to appellant as participating in the arson; and, the evidence of falsified insurance statements provided a motive for burning insured property. When considering a motion for a directed verdict by a criminal defendant, the court must consider the evidence in a light most favorable to the prosecution. There clearly was enough evidence to allow the case to go to the jury.

■ Second, evaluating the credibility of witnesses is not the role of the judge;

such evaluations are the province of the jury. Syl. pt. 4, *State v. Burton*, 163 W.Va. 40, 254 S.E.2d 129 (1979). After viewing the entire trial, the jury found the witnesses credible. It was not error for the circuit court to deny the appellant's motion for a directed verdict.

### C.

"Where the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error." Syl. pt. 5, *State v. Walker*, 188 W.Va. 661, 425 S.E.2d 616 (1992). In this case, however, there were no "harmless errors", therefore the cumulative error doctrine is inappropriate.

### V.

For the foregoing reasons, the judgment of the Circuit Court of Cabell County is affirmed.

Affirmed.