475 S.E.2d 37

**STATE of West Virginia ex rel. William C. FORBES, Prosecuting Attorney for Kanawha County, Petitioner,**

**v.**

**Honorable Herman G. CANADY, Jr., Judge of the Circuit Court of Kanawha County, and Matthew R. Hensley, Respondents.**

No. 23242.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 6, 1996.

Decided June 13, 1996.

Mary Beth Kershner, Assistant Prosecuting Attorney, Charleston, for Petitioner.

Gregory J. Campbell, Campbell & Turkaly, Charleston, for Respondent Hensley.

RECHT, Justice.

In this original prohibition proceeding, the Prosecuting Attorney for Kanawha County ("petitioner"), seeks to prohibit the respondent judge, the Honorable Herman Canady, Judge of the Circuit Court of Kanawha County ("respondent judge"), from entering an order dismissing an indictment charging Matthew Hensley ("defendant") with the crime of malicious assault under W. Va.Code 61–2–9(a) (1978).[1]

The respondent judge has decided that the malicious assault charge in the indictment was an outgrowth of the same transaction as offenses for which the defendant was previously acquitted, and therefore should be dismissed for failure to join all offenses in the same indictment as required by the mandatory language of Rule 8(a) of West Virginia Rules of Criminal Procedure.[2]

---

1. W. Va.Code 61–2–9(a) (1978), "Malicious or unlawful assault," reads:

 If any person maliciously shoot, stab, cut or wound any person, or by any means cause him bodily injury with intent to maim, disfigure, disable or kill, he shall, except where it is otherwise provided, be guilty of a felony, and, upon conviction, shall be punished by confinement in the penitentiary not less than two nor more than ten years. If such act be done unlawfully, but not maliciously, with the intent aforesaid, the offender shall be guilty of a felony, and, upon conviction, shall, in the discretion of the court, either be confined in the penitentiary not less than one nor more than five years, or be confined in jail not exceeding twelve months and fined not exceeding five hundred dollars.

2. Rule 8(a) provides:

 *Joinder of Offenses.*—Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character. *All offenses based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan shall be charged in the same indictment or information in a separate count for each offense, whether felonies or misdemeanors or both.*

 W. Va. R.Crim.P. 8(a) (emphasis added).

The petitioner disagrees and is requesting this Court prohibit the respondent judge from entering the order implementing this decision. Because, as will be discussed below, the record in the Circuit Court of Kanawha County fails to contain critical factual findings as to the extent of the petitioner's knowledge of all of the offenses which should have been charged in a single indictment, we remand this matter to the Circuit Court of Kanawha County with specific directions targeted at a more expanded factual development and corresponding findings of fact and conclusions of law.

## I.

### FACTS

The defendant was involved in a bar fight in Kanawha County on November 16, 1991. Ambulances arrived at the scene and several people were taken from the bar to a Charleston area hospital. The defendant, along with four other people, was arrested at the scene and immediately charged in magistrate court with public intoxication and destruction of property, both misdemeanors. We understand from the record that on November 21, 1991, one of the victims of the fight, Barbara Lane, provided a statement to a detective with the Kanawha County Sheriff's Department regarding injuries she suffered during the fight. The record before us does not contain the statement and we have the representations by the defendant's lawyer, during the course of the hearing on the motion to dismiss, to the extent that the victim told the detective that the defendant allegedly threw a cue ball hitting her in her left eye, causing bone fractures and resulting in plastic and reconstructive surgery. No additional charges were brought against the defendant prior to his trial in magistrate court on March 13, 1992. The defendant was acquit-

ted of both misdemeanors following the trial in magistrate court.

Ms. Lane's statement regarding the nature of her injuries was in the possession of the Kanawha County Sheriff's Department but was not communicated to the prosecuting attorney of Kanawha County until January, 1994, over two years after the bar fight and nearly two years after the trial in magistrate court on the charges of public intoxication and destruction of property.[3] The defendant was indicted by the grand jury for malicious assault, a felony, during the September 1994 term and trial was scheduled for August 7, 1995.

The defendant moved to dismiss the indictment under Rule 8(a) of the West Virginia Rules of Criminal Procedure based on the failure of the State of West Virginia to join the felony charge with the misdemeanor charges prior to the trial in magistrate court in March, 1992. On the day scheduled for trial on the malicious assault charge, the trial court announced that the failure to join all offenses growing out of the same transaction was fatal to the malicious assault charge; however, before the trial court could enter an order dismissing the indictment, this writ of prohibition was sought and a rule to show cause was issued returnable the sixth day of February, 1996.

Because knowledge of the prosecutor is an essential element of the application of Rule 8(a), we must remand this case in order to give the circuit court the opportunity to be informed as to whether or not the prosecuting attorney of Kanawha County knew or should have known of the information related to the Kanawha County Sheriff's Department by Ms. Lane on November 21, 1991, upon which additional charges could have been brought against the defendant prior to his

---

**3.** The record in this original prohibition proceeding is sparse. What information we do have regarding the extent and cause of Ms. Lane's injuries is contained in the Findings of Fact issued by the trial court as follows:

There's no dispute between the parties that the deputy sheriffs who were called to the scene November 16, 1991, on Coonskin Drive, City of Charleston, Kanawha County, West Virginia, were aware that two patrons were trans-

ported via ambulance to the hospital. Detective Flint interviewed the victim herein within five days of the incident and received a report that the injuries were serious.

[T]here is no evidence that the extent of the injuries were ever communicated to the prosecuting attorney's office before a police report was prepared on the subject of the injury and was delivered to the prosecuting attorney in [January] of 1994.

trial on the misdemeanor charges in magistrate court in March 1992.

## II.

### DISCUSSION

#### A.

*State's Right of Review in Criminal Cases*

The defendant resists any effort by the petitioner to obtain review of the respondent judge's decision to dismiss the indictment charging him with malicious assault by contending that the State's only right of review of a trial court's decision is limited to appealing a decision to dismiss an indictment, as being either bad or insufficient, pursuant to W. Va.Code 58–5–30 (1923).[4] The defendant's contention is correct if, indeed, the justification for the dismissal of the indictment is that the indictment is either bad or insufficient.

■ We have recognized that the State has a narrow opportunity to request review of an action of a trial court in a criminal proceeding. The State's right of review is best expressed as being limited to: (1) where the right of appeal is conferred by constitution or statute (Syllabus Point 1, *State v. Jones,* 178 W.Va. 627, 363 S.E.2d 513 (1987) ("Our law is in accord with the general rule that the State has no right of appeal in a criminal case, except as may be conferred by the Constitution or a statute.")); and (2) where the trial court has acted outside its jurisdiction (Syllabus Point 5, *State v. Lewis,* 188 W.Va. 85, 422 S.E.2d 807 (1992)).

■ The sense of the defendant's argument is that W. Va.Code 58–5–30 confers the right upon the State to appeal[5] a decision holding an indictment bad or insufficient, and because the trial court's decision to dismiss the indictment was not grounded upon the sufficiency of the indictment, there can be no appellate review of that decision. We agree that the trial court's announced decision to dismiss the indictment had nothing to do with whether the indictment was bad or insufficient, therefore if the State was attempting to review that decision as provided by W. Va.Code 58–5–30, any review by direct appeal would fail.

There was no challenge by the defendant as to the legal soundness or sufficiency of the indictment that charged the crime of malicious assault. The defendant's quarrel with the indictment is permitting the Prosecuting Attorney of Kanawha County to proceed forward with the prosecution arguing that the prosecutor forfeited that opportunity when he chose not to join the offense of malicious assault with the charges of public intoxication and destruction of property which proceeded to trial in magistrate court on March 13, 1992.

■ An indictment is bad or insufficient for purposes of analysis under W. Va.Code 58–5–30 when within the four corners of the indictment it: (1) fails to contain the elements of the offense to be charged and sufficiently apprise the defendant of what he or she must be prepared to meet; and (2) fails to contain sufficient accurate information to permit a plea of former acquittal or conviction. *Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240, 250–51 (1962). Accordingly, because there is no contention that the indictment failed to contain all the elements of the offense of malicious assault, or that it did not sufficiently apprise the defendant of what he was prepared to meet, or that it failed to contain sufficient accurate information to permit a plea of former acquittal or conviction, then the potential dismissal of the indictment has nothing to do with its being bad or with its sufficiency.

The intention of the respondent judge was to dismiss the indictment based upon the

---

4. W. Va.Code 58–5–30 (1923) provides in pertinent part as follows:

Notwithstanding anything hereinbefore contained in this article, whenever in any criminal case an indictment is held bad or insufficient by the judgment or order of a circuit court, the State, on the application of the attorney general or the prosecuting attorney, may obtain a writ of error to secure a review of such judgment or order by the supreme court of appeals. . . .

5. The term "writ of error" has been replaced in the appellate lexicon by "petition for appeal." W. Va. R.App.P. 1(c).

State's failure to comply with the compulsory joinder rule under 8(a) of the West Virginia Rules of Criminal Procedure, and not upon any defect in the indictment. In *State v. Adkins,* 182 W.Va. 443, 388 S.E.2d 316 (1989), we refused to broaden the definition of "bad or insufficient" beyond its plain and ordinary meaning. Therefore the State would have no right to appeal the announced decision of the Circuit Court of Kanawha County to dismiss the indictment because the right of appeal was not conferred by either constitution or statute.

Although the State does not have the ability to appeal the dismissal of an indictment when it is not bad or insufficient, we recognize that the State is armed with another right of appellate review in the form of prohibition.

In *State v. Lewis,* 188 W.Va. 85, 422 S.E.2d 807 (1992), we exhaustively examined all the circumstances under which appellate review is appropriate in a criminal case upon request by the State. We rejected the notion that the State has a right of appeal in any circumstances other than provided by constitution or statute, and for purposes of appeal, the State is limited to appealing under W. Va.Code 58-5-30. We also clearly stated that certified questions are used exclusively in civil cases, never in criminal cases. *Id.* at Syllabus Point 4. We then stated that petitions for prohibition and mandamus are permissible tools for the State to use, although we noted that "[a]s between mandamus and prohibition, it appears from our cases that prohibition is the preferred and more appropriate remedy to challenge the actions of a court when the allegation is that the trial court was without jurisdiction or was acting beyond its legitimate powers." *Lewis,* 188 W.Va. at 91, 422 S.E.2d at 813.

 If a trial court improperly interferes with a State's right to prosecute, the court, in effect, exceeds its jurisdiction. In *State v. Lewis,* we stated in Syllabus Point 5 as follows:

> The State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction. Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause nor the defendant's right to a speedy trial. Furthermore, the application for a writ of prohibition must be properly presented.

*Id.* at Syllabus Point 5; *see also State ex rel. Rusen v. Hill,* 193 W.Va. 133, 454 S.E.2d 427 (1994) (reviewing the dismissal of an indictment through a writ of prohibition based on the State's pretrial discovery violations). In this case, the petitioner maintains that the trial court exceeded its jurisdiction by determining that the indictment should be dismissed based on the State's failure to comply with the mandatory provisions of Rule 8(a). We agree that the circuit court will deprive the State of its right to prosecute this case or deprive it of a valid conviction if the indictment was improperly dismissed. Accordingly, the circuit court's decision to dismiss the indictment against the defendant is reviewable through this writ of prohibition.

### B.

### *West Virginia Rule of Criminal Procedure 8(a)*

Any discussion of when and why two or more offenses must be charged in the same charging instrument begins with *State ex rel. Watson v. Ferguson,* 166 W.Va. 337, 274 S.E.2d 440 (1980), which was the precursor to the procedural joinder rule included in W. Va. R.Crim.P. 8(a).

In *Watson,* the defendant was charged in one indictment with murdering four persons. The defendant wanted to have all four homicides tried in a single proceeding. This Court ultimately agreed with the trial court in denying this relief because while the separate acts were temporally related, they were not the "result of a single volitive act on the part of the defendant," and therefore may be tried and punished separately. *Id.* at 352, 274 S.E.2d at 448. What we did in *Watson* was to formulate a procedural, as opposed to a constitutional, rule which related to the prosecution upon multiple offenses by way of

a single trial. Syllabus Point 1 of *Watson* states:

> A defendant shall be charged in the same indictment, in a separate count for each offense, if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are two or more acts or transactions connected together or constituting parts of a common scheme or plan.

*Id.* at Syllabus Point 1.

Soon after *Watson* was published, this Court, under its inherent rule-making power,[6] adopted the West Virginia Rules of Criminal Procedure, effective October 1, 1981, and with some minor cosmetic differences, language similar to Syllabus Point 1 in *Watson* appears in Rule 8(a), which has become idiomatically known as the mandatory or compulsory joinder rule.[7]

■ West Virginia's mandatory joinder rule is to be contrasted with the permissive joinder rule contained in Rule 8(a) of the Federal Rules of Criminal Procedure.[8] As we said in *Watson*, the mandatory joinder rule requires the defendant to be tried in a unitary trial for multiple offenses arising out of the same transaction in order to avoid the harassment and anxiety of multiple trials.[9]

■ Since Rule 8(a) has been part of our criminal procedure jurisprudence, several qualifications to the application of the rule have evolved through case law despite the absence of explicit language within the rule. These qualifications were necessitated to avoid an absurd result of confounding our criminal justice system by a simple mechanical application of the rule without recognizing the practical problems not specifically addressed in the rule.

The first qualification is that all offenses, even though based on the same act or transaction or constituting parts of a common scheme or plan, must have occurred in the same jurisdiction before there is a compulsion to charge all offenses in the same charging documents. *Watson*, 166 W.Va. at 345, 274 S.E.2d at 444, n. 13.[10]

The second qualification is that the prosecuting attorney must have knowledge of all offenses. *Id.; see also Cline v. Murensky*, 174 W.Va. 70, 73, 322 S.E.2d 702, 706 (1984).

■ The third qualification is, in reality, a variation on the theme expressed in the second qualification, in that the prosecuting attorney must have had an opportunity to attend the proceeding where the first offense is presented.[11] *Cline v. Murensky* at Syllabus Point 2.

In *Cline*, we enlarged the Rule 8(a) requirement of the prosecuting attorney's knowledge of multiple offenses in a single transaction which may have been committed by the defendant to include having both knowledge of multiple offenses or an oppor-

---

6. W.Va. Const. Art. VIII, §§ 3, 8; *Stern Bros. v. McClure*, 160 W.Va. 567, 236 S.E.2d 222 (1977).

7. *See supra* note 2.

8. Fed.R.Crim.P. 8(a) states:
 Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

9. *Watson* also contains a catalogue of reasons why a mandatory procedural vis-à-vis constitutional rule is a more rational approach to affording the defendant an opportunity of being tried at one time on multiple offenses arising from the same transaction.

10. This qualification was contained in footnote 13 of *Watson* as:

 > There is an obvious qualification to this rule, in that offenses which are unknown to the prosecuting attorney were not committed within the same county are not subject to this joinder rule.

 *Watson*, 166 W.Va. at 345, 274 S.E.2d at 444, n. 13.

11. By virtue of the knowledge and opportunity qualifications, which in actuality become a combined second qualification as stated in Syllabus Point 2 of *Cline*, the State is not precluded from subsequently seeking an indictment for a second offense when the prosecuting attorney had no knowledge of or opportunity to attend the magistrate court proceeding of the first offense. Syllabus Point 2, *Cline v. Murensky*, 174 W.Va. 70, 322 S.E.2d 702 (1984).

tunity to attend the magistrate court hearing where the first of those multiple offenses is being tried. In *Cline,* two people were involved in a bar fight and were immediately charged and pled guilty in magistrate court to the misdemeanor offense of brandishing a weapon, all within a few hours after the fight. Subsequently, both individuals were indicted in the Circuit Court of McDowell County upon the charge of carrying a weapon without a license. Both offenses arose from events which occurred during the bar fight.

The defendants contended that the prosecuting attorney was precluded from seeking the indictment for the offenses of carrying a weapon without a license, since the offense to which the defendants had previously entered a plea of guilty (brandishing weapons) arose from the same incident or transaction, thereby implicating the mandatory procedural joinder rule announced in *Watson* and formalized in Rule 8(a).[12] Our decision under these facts was that because of the swiftness of the acceptance of the plea to the first offense within hours after the criminal event, the prosecuting attorney had no knowledge of other criminal activity of the defendants nor did it have an opportunity to attend the magistrate court's hearing where the plea of guilty was accepted on the first offense of brandishing a weapon. Accordingly, the State was not precluded from seeking an indictment of the second offense of carrying a weapon without a license because Rule 8(a) was not violated.

One of the better analyses of the mandatory joinder rule, as it applies to when an indictment for a subsequent offense must be dismissed for failure to join that charge with a first offense when all offenses arise from the same transaction, is contained in *Jeffrey v. District Court,* 626 P.2d 631 (Colo.1981). In *Jeffrey,* the defendant was involved in an escapade that produced two charges. The first a misdemeanor (third degree assault), and the second a felony (first degree criminal trespass). The district attorney was aware of both charges. Colorado has adopted a compulsory joinder rule similar to West Virginia's, except knowledge of the several offenses being committed within a specific jurisdiction is expressed within the rule as a prerequisite to compulsory joinder of all offenses arising out of a series of acts from the same criminal episode.

In *Jeffrey,* the defendant pled guilty to the initial misdemeanor charge and thereafter moved to dismiss the felony charge on the ground that all charges occurred during the same criminal episode, and the mandatory joinder rule compelled the district attorney to bring all charges in a single charging document. The Colorado Supreme Court held that the compulsory joinder rule prohibited the subsequent prosecution for the felony offense, reasoning that if the prosecuting authorities have knowledge of other offenses at a time when jeopardy attaches, which should have been joined in a single prosecution or should have been the basis to amend the charges to consolidate separately filed cases in a single prosecution, then the defendant cannot be prosecuted for other offenses based on the same act or series of acts arising from the same criminal episode. The court in *Jeffrey* concluded that "[s]uch a rule not only protects an accused from unnecessary sequential prosecutions but also safeguards the 'ethical and diligent prosecutor from technical, arbitrary bans to subsequent prosecution of companion offenses discoverable too late to permit consolidation.' II ABA Standards for Criminal Justice, Joinder and Severance Standard 13–2.3(c), commentary at 13.27–28 (2d ed. 1980)." *Jeffrey,* 626 P.2d at 638.

Rule 8(a) compels the prosecuting attorney to charge in the same charging document all offenses based on the same act or transaction, or on two or more acts or transactions, connected together or constituting parts of a common scheme or plan, whether felonies, misdemeanors or both, provided that the offenses occurred in the same jurisdiction, and

---

**12.** In *Cline,* the primary challenges to the subsequent indictments were grounded in a violation of the double jeopardy clause of the United States and West Virginia Constitutions. U.S. Const.Amend. V and W. Va. Const. Art. III, § 5. However, the Court felt compelled to discuss the impact of the mandatory procedural joinder rule along with the double jeopardy argument. Ultimately the Court found that neither the procedural joinder rule nor the double jeopardy rule was violated.

the prosecuting attorney knew or should have known of all the offenses, or had an opportunity to present all offenses prior to the time that jeopardy attaches in any one of the offenses.

The petitioner argues that there may be yet another qualification to the mandatory joinder rule as expressed in *Gilkerson v. Lilly*, 169 W.Va. 412, 288 S.E.2d 164 (1982).

*Gilkerson* has sometimes been analyzed to mean that whenever "countervailing policies" exist to avoid the draconian requirements of Rule 8(a), then the State shall be relieved of any consequences resulting from the failure to comply with that rule. We believe the petitioner's reliance on *Gilkerson* is misplaced and furthermore, the time has arrived to clarify any misconceptions surrounding *Gilkerson*.

In *Gilkerson*, the defendant was simultaneously charged in magistrate court with contributing to the delinquency of a minor, a misdemeanor, and charged in circuit court with nighttime breaking and entering, a felony; both arising out of the same transaction. Following the defendant's conviction in magistrate court for the misdemeanor in September 1979, he was indicted for nighttime breaking and entering in January 1980. The defendant challenged the indictment on the grounds that the subsequent prosecution was barred under the "same transaction test" within a double jeopardy analysis. We disagreed and held that there was no bar to the second prosecution because the burden was on the defendant to move in magistrate court that the misdemeanor charge be brought by indictment and tried together with the pending felony prosecution in circuit court. We stated:

> In order for a conviction or acquittal in magistrate court for a misdemeanor to bar a subsequent prosecution in circuit court for a felony arising out of the same transaction as the misdemeanor, if the only double jeopardy bar asserted is the "same transaction test" as articulated in *State ex rel. Dowdy v. Robinson*, 163 W.Va. 154, 257 S.E.2d 167 (1979),[13] the defendant

must have moved in the magistrate court that his misdemeanor charge be brought by indictment and tried together with the pending felony prosecution in the circuit court.

Syllabus Point 3, *Gilkerson v. Lilly*, 169 W.Va. 412, 288 S.E.2d 164 (1982).

We reasoned that the requirement for the defendant to move for joinder of these two offenses by way of indictment proceeding in the circuit court for offenses arising out of the "same transaction," was necessary to avoid "utterly outrageous miscarriages of justice" attendant to the operation of the magistrate court system. *Gilkerson*, 169 W.Va. at 419, 288 S.E.2d at 168.

The State contends that *Gilkerson* controls in the resolution of this case because the defendant was charged and tried in magistrate court and subsequently indicted for a felony in circuit court. The obvious distinction between *Gilkerson* and this case is that there was no felony charge pending at the time the misdemeanor charges were pending, or even at the time of the trial and acquittal of those charges in the case *sub judice*. *Gilkerson* is not relevant factually to the resolution of this case.

■ However, what is curious about *Gilkerson* is that there may have been some confusion in discussing whether the "same transaction test" within a double jeopardy analysis is analogous to the compulsory joinder of offenses arising from the same transaction under Rule 8(a). It is beyond cavil that the burden of joining multiple offenses arising out of the same transaction, occurring within the same jurisdiction and which are known or should have been known to the prosecuting attorney, or which the prosecuting attorney had an opportunity to present, is upon the prosecuting attorney and not the defendant. We now dispel any notion that *Gilkerson* represents a departure from the clear language of Rule 8(a), which places the burden on the State and not the defendant to obtain the necessary joinder. Syllabus Point 3 of *Gilkerson* is directed exclusively to a

---

**13.** *State ex rel. Dowdy v. Robinson*, 163 W.Va. 154, 257 S.E.2d 167 (1979) was overruled on other grounds by *State v. Adkins*, 170 W.Va. 46, 289 S.E.2d 720 (1982); *see also State v. Johnson*, 197 W.Va. 575, 476 S.E.2d 522 (1996).

double jeopardy and not a mandatory joinder analysis.[14]

## C.

### Development on Remand

What we learn in regard to the resolution of this case by applying the principles of *Watson* and *Cline* and the reasoning of the Colorado Supreme Court in *Jeffrey* is that under Rule 8(a) of the West Virginia Rules of Criminal Procedure, if the prosecuting attorney of Kanawha County knew or should have known of the offense of malicious assault at the time that jeopardy attached to the charges of destruction of property and intoxication, which should have been joined in a single prosecution or should have been the basis to amend the charges to consolidate separately filed cases in single prosecution, then the defendant cannot be prosecuted for other offenses based on the same act or series of acts arising from the same criminal episode.

How do we apply this principle to the facts of this case in order to arrive at any meaningful conclusion? What is not disputed in this meager record that we have to work with is that (1) all of the offenses charged against the defendant arose from the same transaction; (2) the misdemeanors were tried before a magistrate some four months after the event from which the charges arose; (3) no effort was made to join the malicious assault charge with the misdemeanors by

way of indictment prior to the commencement of the trial in magistrate court in March 1992; (4) the defendant was acquitted in magistrate court on both misdemeanors; and (5) one of the victims of the bar fight gave a statement on November 21, 1991, to a detective with the Kanawha County Sheriff's Department describing serious injuries she sustained during the fight.

What we do not know is (1) whether and to what extent any information which was communicated to one of the detectives of the Sheriff's Department was ever subsequently communicated to the office of the prosecuting attorney;[15] (2) what protocols were in place between November 1991 and March 1992 assuring reliable and effective communication of criminal activity between law enforcement officers in Kanawha County and the office of the prosecuting attorney of Kanawha County;[16] (3) if no protocols were in place assuring reliable and effective communication between law enforcement officers and the prosecuting attorney's office, why not; (4) if the protocols were in place, why were they not implemented in this case; (5) what participation, if any, did any member of the prosecuting attorney's office have in the preparation of any phase of this case between the date of the event and the date that jeopardy attached which is March 1992, at the time the trial the misdemeanors began in magistrate court.

All of these inquiries are critical in determining whether or not the prosecuting attor-

---

**14.** In our effort to clarify any language in *Gilkerson* that might suggest that Rule 8(a) imposes a burden upon the defendant to move to join offenses within the meaning of Rule 8(a), we cannot ignore the *per curiam* opinion in *State v. Duskey*, 178 W.Va. 258, 358 S.E.2d 819 (1987). *Duskey* suggests that there may be additional "countervailing policy reasons" to avoid a mandatory joinder of offenses other than the qualifications recited in this opinion. While *Duskey* is a *per curiam* opinion and that language is merely *obiter dicta*, *see Lieving v. Hadley*, 188 W.Va. 197, 423 S.E.2d 600 (1992), we need to emphasize that there are no other "countervailing policy reasons" why the provisions of Rule 8(a) are not mandatory assuming all elements requiring its application are extant.

**15.** We are aware that there was no evidence as to the extent of Ms. Lane's injuries communicated to the prosecuting attorney's office prior to

the law enforcement officer's report relayed in January 1994. The record does not reveal, however, if any other information was communicated to the prosecuting attorney. *See supra* note 3.

**16.** The prosecuting attorney has the responsibility of learning as much about what criminal charges should be brought against an individual arising out of an occurrence as soon as is practicable. While there may be occasions when a law enforcement officer fails to inform a prosecutor of all they know, there can be no serious challenge to the requirement that procedures and regulations be established to ensure communication between law enforcement agencies and a prosecuting attorney's office of all relevant information on each case. *See Kyles v. Whitley*, 514 U.S. ——, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

ney of Kanawha County knew or should have known of the malicious assault prior to the commencement of the trial in magistrate court in March 1992. We do not, by enumerating these areas of inquiry, desire or intend to trespass upon the trial court's prerogatives in conducting a hearing designed to be able to make findings and conclusions upon the issue of what the prosecuting attorney's office knew and when they knew it.

Following the conclusion of the hearing upon remand, the trial court shall make findings and conclusions consistent with the principles expressed in this opinion. If those findings support the conclusion that the office of the prosecuting attorney of Kanawha County knew or should have known of the events that shaped the malicious assault indictment or had an opportunity to join all offenses in a single charging document prior to the time that jeopardy attached to the misdemeanor offenses on March 13, 1992, then the malicious assault indictment must be dismissed by virtue of the strictures contained in Rule 8(a).

Writ granted as moulded.