735 S.E.2d 898

**STATE of West Virginia, Plaintiff Below, Respondent,**

v.

**John A. HARTMAN, Defendant Below, Petitioner.**

No. 11–0784.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 19, 2012.

Decided Nov. 21, 2012.

Richard H. Lorensen, Esq., WV Public Defender Services, Charleston, WV, for Petitioner.

William C. Means, Esq., Senior Assistant Prosecuting Attorney, Preston County Prosecuting Attorney's Office, Kingwood, WV, for Respondent.

WORKMAN, Justice:

This case is before this Court upon appeal of a final order of the Circuit Court of Preston County entered on April 7, 2011.[1] In that order, John A. Hartman (hereinafter "the petitioner") was sentenced to imprisonment in the State Penitentiary for not less than one nor more than fifteen years for burglary (against his father), with credit for time served; one year in the regional jail and a $500.00 fine for battery of an elder person (against his father), to be served consecutive to the burglary conviction; and six months in the regional jail for his conviction of domestic assault (against his stepmother), to be served concurrently with the sentence for battery of an elder person. All three convictions were a result of one trial and based upon the same criminal acts by the petitioner. In this appeal, the petitioner asserts that the circuit court erred by granting the State's motion to join a subsequently filed information (the domestic assault against the petitioner's stepmother) with a previously returned indictment (which included the burglary and battery charges against the petitioner's father) where the basis for joinder was that they arose out of a common nexus of fact. Based upon the parties' briefs and arguments, as well as the relevant statutory and case law, this Court is of the opinion that the circuit court did not commit reversible error and, accordingly, affirms the decision below.

## I.

### FACTS

On April 16, 2009, a protective order was entered wherein the petitioner was prohibited from having any contact with a Ms. Ann Getty. Ms. Getty is not a victim in the present appeal and her relationship to the petitioner is not clear in the record before this Court; however, the protective order entered in her favor is relevant to this appeal. The order specifically prohibited the petitioner from contacting Ms. Getty "by telephone, by voice mail, by e-mail or other electronic medium, or by any written instrument." The order further provided that the petitioner "shall not enter into any school, business, home, or other place where Ann Getty is located or might reasonably expect to be located." The order also prohibited the petitioner from sending "any messages, of any form whatsoever, to Ann Getty through any third parties. . . ."

In spite of the protective order, the petitioner continued to attempt to contact Ms. Getty through third parties, including his stepmother, Eileen Hartman. Ms. Hartman testified about several occasions when the petitioner sought to have her contact the Getty family. For example, on April 19, 2009, when she refused to call the Getty family on behalf of the petitioner, she said that the petitioner became very angry. According to Ms. Hartman, at one point the petitioner said, "guns would be rammed down people's throats." She interpreted that as a threat toward herself and her husband, George Hartman, the petitioner's father. She further testified that the petitioner told her that he was "going to take your husband out" intimating that he would kill Mr. Hartman. She said the petitioner called her about every two weeks from April of 2009 until the incident in August of 2009 requesting that she contact the Getty family.

On August 9, 2009, the petitioner stopped by his eighty-four-year-old father's home in an attempt to speak with Ms. Hartman once again seeking to have her contact the Getty family on his behalf in violation of the protective order. Mr. Hartman informed the petitioner that Ms. Hartman did not wish to speak with him. The petitioner returned the next day and again asked to speak with Ms. Hartman. Mr. Hartman once more told the petitioner that Ms. Hartman did not wish to see him. The petitioner then punched his father through the screen door, after which

---

1. By order entered April 7, 2011, the petitioner was re-sentenced for purposes of perfecting his appeal. His original sentencing occurred on April 2, 2010.

Mr. Hartman fell and struck his head. Mr. Hartman said he "saw his fist coming through the screen and he cold cocked me and knocked me back in the foyer." Mr. Hartman said he was then dragged outside of the home. He explained:

the next thing I remembered I was laying outside with my head on the concrete stoop there, and then he grabbed me by the undershirt, I didn't have a shirt on at the time, just a sleeveless undershirt, and he grabbed me by that and halfway picked me up and took me back into the living room and threw me down.

Mr. Hartman said that while he was being beaten he began screaming to Ms. Hartman to call the police. He said he required medical treatment for an injured eye and the back of his head where it hit the concrete.

As Mr. Hartman was being beaten, Ms. Hartman was in the basement doing laundry. She said that she heard the disturbance upstairs between the petitioner and Mr. Hartman and it sounded like someone throwing suitcases around and "it was very heavy, thumps, a lot of thumps. Very very heavy." It was at that point when she called 911 and requested help. She testified that she was "scared to death" due to the petitioner's prior threats. Eventually the police arrived and told her that it was safe to come upstairs. She found Mr. Hartman "bleeding profusely from the head" and noticed blood outside and inside the house.

On October 20, 2009, the petitioner was indicted on one felony count of burglary [2] and one felony count of malicious assault on an elderly person [3] for attacking Mr. Hartman. During a January 8, 2010,[4] pre-trial hearing, the State sought to file and consolidate a new charge by way of a misdemeanor information that arose out of the same factual transaction as the underlying indictment, but involving Ms. Hartman. The charge was a single count of domestic assault [5] and the circuit court allowed consolidation.

On February 2, 2010, the petitioner's jury trial began. On February 3, 2010, the jury returned guilty verdicts for burglary (against his father), the lesser included misdemeanor offense of battery of an elder person (against his father), and domestic assault (against his stepmother). On February 12, 2010, the circuit court entered its conviction order. On April 2, 2010, after denying the petitioner's post-trial motions, the circuit court sentenced the petitioner to a term of one to fifteen years of incarceration for burglary, one year of incarceration for battery of an elder person to be served consecutively to the felony conviction, and six months of incarceration for domestic assault, to run concurrently with the battery charge. This appeal followed.

## II.

### STANDARD OF REVIEW

The petitioner asserts that the circuit court erred by granting the State's mo-

---

2. W.Va.Code § 61–3–11(a) provides:

Burglary shall be a felony and any person convicted thereof shall be confined in the penitentiary not less than one nor more than fifteen years. If any person shall, in the nighttime, break and enter, or enter without breaking, or shall, in the daytime, break and enter, the dwelling house, or an outhouse adjoining thereto or occupied therewith, of another, with intent to commit a crime therein, he shall be deemed guilty of burglary.

3. W.Va.Code § 61–2–9(a), in part, provides: "If any person maliciously shoot, stab, cut or wound any person, or by any means cause him bodily injury with intent to maim, disfigure, disable or kill, he shall, except where it is otherwise provided, be guilty of a felony...." Moreover, W.Va. Code § 61–2–10a provides: "If any person be convicted and sentenced for an offense defined under the provisions of section nine or ten of this article, and if the person shall have committed such offense against a person who is sixty-five

years of age or older, then the sentence shall be mandatory and shall not be subject to suspension or probation...."

4. The State provided notice that it intended to file the information during a December 3, 2009, hearing. The filing of the information was delayed until January 8, 2010, pending the outcome of the petitioner's forensic evaluation.

5. W.Va.Code § 61–2–28(b) provides:

Domestic assault.—Any person who unlawfully attempts to commit a violent injury against his or her family or household member or unlawfully commits an act which places his or her family or household member in reasonable apprehension of immediately receiving a violent injury, is guilty of a misdemeanor and, upon conviction thereof, shall be confined in a county or regional jail for not more than six months, or fined not more than one hundred dollars, or both.

tion to join a subsequently filed information with a previously returned indictment where the basis for joinder was that they arose out of a common nexus of fact. This Court has held that: "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). This Court has also indicated that a circuit court's final order and ultimate disposition are reviewed under the abuse of discretion standard. Syllabus Point 1, *State ex rel. Hechler v. Christian Action Network*, 201 W.Va. 71, 491 S.E.2d 618 (1997). With these standards in mind, the parties' arguments will be considered.

## III.

### DISCUSSION

As previously discussed, on October 20, 2009, the petitioner was indicted on two felonies, i.e., burglary and malicious assault of an elder person, his father, Mr. Hartman. Soon thereafter, on January 8, 2010, the State filed an information against the petitioner for a misdemeanor charge of domestic assault against his stepmother, Ms. Hartman, that arose from the same set of facts as the criminal actions against Mr. Hartman. The charge relating to Ms. Hartman was not included in the indictment. The circuit court allowed the consolidation of the indictment with the misdemeanor information charge relating to Ms. Hartman and the case was resolved during one trial.

■ The petitioner argues that the circuit court committed error by consolidating the indictment with the later filed information charge. He states that such a consolidation constitutes an amendment to the indictment. The petitioner points out that this Court has held that "[a] defendant shall be charged in the same indictment, in a separate count for each offense, if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are two or more acts or transactions connected together or constituting parts of a common scheme or plan." Syllabus Point 1, *State ex rel. Watson v. Ferguson*, 166 W.Va. 337, 274 S.E.2d 440 (1980). The petitioner further relies on Syllabus Point 3 of *State ex rel. Forbes v. Canady*, 197 W.Va. 37, 475 S.E.2d 37 (1996), for the proposition that:

Rule 8(a) of the West Virginia Rules of Criminal Procedure compels the prosecuting attorney to charge in the same charging document all offenses based on the same act or transaction, or on two or more acts or transactions, connected together or constituting parts of a common scheme or plan, whether felonies, misdemeanors or both, provided that the offenses occurred in the same jurisdiction, and the prosecuting attorney knew or should have known of all the offenses, or had an opportunity to present all offenses prior to the time that jeopardy attaches in any one of the offenses.[6]

The petitioner argues that the information was not based on later discovered evidence, as the prosecution knew about the 911 call and testimony offered during presentment to the grand jury that his stepmother was hiding in the basement and could hear the assault on the petitioner's father. As such, the petitioner contends that while the prosecution was aware of the facts that constituted the later-added charge of domestic assault, it chose not to include that in the original indictment. The petitioner maintains that the prosecution used consolidation to circumvent the grand jury and to gain advantage over the petitioner, in contradiction to this Court's prior holdings.

The State argues that Section 4 of Article III of the State Constitution[7] and Rule 7(a) of the Rules of Criminal Procedure require

---

6. As discussed *infra,* Rule 8(a) was amended after this Court decided *Canady.*

7. W.Va. Const. Art. III, § 4, provides:

The privilege of the writ of habeas corpus shall not be suspended. No person shall be held to answer for treason, felony or other crime, not cognizable by a justice, unless on presentment or indictment of a grand jury. No bill of attainder, ex post facto law, or law impairing the obligation of a contract, shall be passed.

only that felony charges be presented to a grand jury, and allows a misdemeanor to be prosecuted by either information or indictment. Rule 7(a) provides:

> Use of Indictment or Information. An offense which may be punished by life imprisonment shall be prosecuted by indictment. Any other felony offense may be prosecuted by information if the indictment is waived. *Any misdemeanor may be prosecuted by indictment or information. An information may be filed without leave of court.*

(Emphasis added). The State further notes that the current version of Rule 8(a)(2) of the Rules of Criminal Procedure requires only a single prosecution, not a single charging document. Rule 8(a)(2) provides:

> (a) Joinder of Offenses.
>
> . . . .
>
> (2) Mandatory Joinder. If two or more offenses are known or should have been known by the exercise of due diligence to the attorney for the state at the time of the commencement of the prosecution and were committed within the same county having jurisdiction and venue of the offenses, all such offenses upon which the attorney for the state elects to proceed shall be prosecuted by separate counts in a single prosecution if they are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan, whether felonies or misdemeanors or both. Any offense required by this rule to be prosecuted by a separate count in a single prosecution cannot be subsequently prosecuted unless waived by the defendant.

8. W.Va. Rule of Criminal Procedure 2 provides:

> These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay.

9. In Syllabus Point 2 of *Haines*, this Court held:

> To the extent that *State v. McGraw*, 140 W.Va. 547, 85 S.E.2d 849 (1955), stands for

For these reasons, the State argues that the circuit court was correct in allowing consolidation.

It is clear that the State has a duty to bring an incarcerated person to trial expeditiously, and West Virginia Rule of Criminal Procedure 2 requires circuit courts to construe criminal procedure rules in such a way as to eliminate unnecessary delay.[8] Moreover, as this Court has explained:

> An indictment is sufficient under Article III, § 14 of the West Virginia Constitution and W. Va. R.Crim. P. 7(c)(1) if it (1) states the elements of the offense charged; (2) puts a defendant on fair notice of the charge against which he or she must defend; and (3) enables a defendant to assert an acquittal or conviction in order to prevent being placed twice in jeopardy. Syl. Pt. 6, *State v. Wallace*, 205 W.Va. 155, 517 S.E.2d 20 (1999).

Syllabus Point 5, *State v. Haines*, 221 W.Va. 235, 654 S.E.2d 359 (2007). In Syllabus Point 3 of *Haines*, this Court explained that:

> Any substantial amendment, direct or indirect, of an indictment must be resubmitted to the grand jury. An 'amendment of form' which does not require resubmission of an indictment to the grand jury occurs when the defendant is not misled in any sense, is not subjected to any added burden of proof, and is not otherwise prejudiced. Syl. Pt. 3, *State v. Adams*, 193 W.Va. 277, 456 S.E.2d 4 (1995).[9]

Upon consideration of all of the facts, it is clear that the State did not amend the indictment nor was there any allegation that the original indictment was flawed in any way. Instead, the petitioner was indicted on the two known charges and it was only after more details of the incident surfaced that the State sought to file the information for the

> the proposition that 'any' change to an indictment, whether it be form or substance, requires resubmission to the grand jury for its approval, it is hereby expressly modified. An indictment may be amended by the circuit court, provided the amendment is not substantial, is sufficiently definite and certain, does not take the defendant by surprise, and any evidence the defendant had before the amendment is equally available after the amendment. Syl. Pt. 2, *State v. Adams*, 193 W.Va. 277, 456 S.E.2d 4 (1995).

misdemeanor domestic assault. As previously mentioned, Rule 7(a) of the Rules of Criminal Procedure provides that a felony, other than one punishable by life imprisonment, may be prosecuted by indictment or by information if the indictment is waived. More importantly, however, Rule 7(a), specifically provides that: "Any misdemeanor may be prosecuted by indictment or information. An information may be filed without leave of court." The petitioner incorrectly makes a blanket assertion without citation to any relevant or applicable law that a misdemeanor cannot be added by information after a defendant has already been charged with a separate crime or crimes by indictment. As discussed in more detail *infra*, it was only after subsequent investigation and receiving the recording of the 911 conversation that the prosecutor determined that the additional crime of domestic assault occurred against Ms. Hartman.

The petitioner's reliance on *Watson, supra,* and *Canady, supra,* for the proposition that the misdemeanor charge of domestic assault against Ms. Hartman had to be charged in the original indictment is misplaced. In *Watson,* that defendant was charged by the grand jury with the murder of four people, all occurring the same night in the same home. In that case, the defendant moved the trial court to try all four murder charges in the same proceeding citing to our prior case law. The trial court declined the defendant's request and the case proceeded on the first murder charge. The defendant was convicted of that charge and the trial court set a date for a second trial. The defendant then sought a writ of prohibition to prevent the trial on the basis that jeopardy had attached and that further trials were precluded. This Court considered the arguments and concluded that "where multiple homicides occur even though they are in close proximity in time, if they are not the result of a single volitive act of the defendant, they may be tried and punished separately...." 166 W.Va. at 352, 274 S.E.2d at 448. In *Watson,* all four murders were known at the time that defendant was charged. They occurred relatively at the same time and in the same home. Three of the murders occurred within one room of the home and one murder

occurred in the hallway. The prosecutor in *Watson* made a decision concerning how to proceed with separate trials against a defendant based upon four known crimes. *Watson* is vastly different from the case at hand. In this case, the facts that gave rise to the charge of domestic assault were not known to the State at the time of the filing of the indictment. Moreover, in the petitioner's case one additional misdemeanor charge was joined with two previously filed charges based upon new information not available at the time of the filing of the indictment. Conversely, in *Watson,* the defendant sought to be tried in one trial for four separate crimes, but the prosecution chose to proceed with separate trials for each crime.

The petitioner's reliance on *Canady* is also misplaced to the extent that he contends that Rule 8(a) of the Rules of Criminal Procedure compels the prosecuting attorney to have charged him with all three crimes in the same original charging document. *See* Syllabus Point 3, *Canady.* The *Canady* decision was written in 1996 and Rule 8(a) has subsequently been amended. The rule now differentiates between permissive joinder, which requires a single indictment or information, and mandatory joinder, which requires only a **single prosecution.** As such, Rule 8(a) does not require a unitary charging document, but instead requires a unitary trial for all charges stemming from the same act or transaction. As this Court explained in Syllabus Point 3 of *State ex rel. Blaney v. Reed,* 215 W.Va. 220, 599 S.E.2d 643 (2004),

> Under Rule 8(a)(2) of the West Virginia Rules of Criminal Procedure, when the prosecuting attorney is or should be aware of two or more offenses committed within the same county and which are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan, whether felonies or misdemeanors, **all such offenses must be prosecuted in a single prosecution.** Failure to unite all such offenses will result in a bar to subsequent prosecution of any offense omitted only if jeopardy attached to any of the offenses in the initial prosecution.

(Emphasis added).

The petitioner's further reliance on *Canady* for the principle that the misdemeanor of

domestic assault against Ms. Hartman could not be added by information because the prosecutor knew about the crime at the time he filed the indictment is not supported by the facts. In *Canady,* this Court discussed Rule 8(a) at length. The defendant in *Canady* was involved in a bar fight and subsequently charged with public intoxication and destruction of property. No additional charges were brought against the defendant prior to his trial in magistrate court in which he was acquitted of both misdemeanors. Thereafter, *more than two years after the bar fight and nearly two years after the trial in magistrate court on the prior charges,* the defendant was charged with malicious assault, a felony, arising from an injury suffered by another person in the same bar fight which gave rise to the earlier misdemeanor charges.

On the day scheduled for trial, the trial court in *Canady* announced that the failure to join all offenses growing out of the same transaction was fatal to the malicious assault charge. The prosecuting attorney then sought to prevent the trial court from entering an order dismissing the malicious assault charge by filing a petition for a writ of prohibition in this Court. We granted the writ as moulded and remanded the case to give the circuit court the opportunity to determine whether or not the prosecuting attorney knew or should have known of the information related to the malicious assault charge prior to the defendant's trial in magistrate court. 197 W.Va. 37, 475 S.E.2d 37. This Court also opined that "the mandatory joinder rule requires the defendant to be tried in a unitary trial for multiple offenses arising out of the same transaction in order to avoid the harassment and anxiety of multiple trials." 197 W.Va. at 43, 475 S.E.2d at 43. (footnote omitted).

In the petitioner's case, the felony charges of burglary and the battery of an elder person were brought in the original October 20, 2009, indictment against the petitioner. Because those two alleged offenses were known, they were included in the indictment. The record reflects that the indictment was presented promptly in consideration of the fact that the petitioner remained incarcerated in lieu of bail. On that date, the grand jury indicted the petitioner on both charges. Soon thereafter, on November 20, 2009, the State provided notice to the petitioner through the "State's Notice of Intent to Introduce Evidence Which is Subject to In Camera Hearing," and during a December 3, 2009, hearing, that it intended to file the misdemeanor information regarding the additional charge of domestic assault against Ms. Hartman. The actual filing of that information was delayed until January of 2010, pending the outcome of the petitioner's forensic evaluation and a subsequent finding that he was competent to stand trial.

There is no information in the record before this Court to conclude that the prosecuting attorney knew or should have known of the additional offense against Ms. Hartman prior to the filing of the indictment. In fact, the prosecuting attorney maintains that while he had knowledge that a 911 call was made by Ms. Hartman, he had not received the actual recording of the call prior to filing the indictment. The prosecutor contends that it was after listening to the 911 call that it was clear that a domestic assault occurred. Once it was clear that another crime had been committed, the petitioner was informed that the prosecuting attorney planned to bring that additional charge by way of information.

■ It is also important to note that while the petitioner's trial began on February 2, 2010, the petitioner did not argue that he needed more time to prepare and he did not request a continuance. He simply argued that the State had to dismiss the charge and go back to the grand jury. There is nothing in our law to support the petitioner's argument and forcing the prosecuting attorney to bring a superseding indictment would have resulted in unnecessary delay under the facts of this case. Accordingly, we now hold that pursuant to Rules 7(a) and 8(a) of the West Virginia Rules of Criminal Procedure, when an indictment has been returned against a defendant, a prosecutor may bring an additional misdemeanor charge against a defendant pursuant to an information, as long as the facts giving rise to the new charge were not known when the indictment was first presented. Given all the above, it is clear

that the prosecution was unaware of the facts that were the basis of the domestic assault charge until after the indictment was returned against the petitioner. Therefore, the circuit court did not error by allowing consolidation of the indictment with the later filed information charge.

## IV.

### CONCLUSION

For the reasons stated above, we affirm the decision of the Circuit Court of Preston County entered on April 7, 2011.

Affirmed.