# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Edgar W. Friedrichs, Jr.,**
**Petitioner Below, Petitioner**

**vs.)  No. 17-0410** (Fayette County 11-C-163)

**Ralph Terry, Superintendent,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

**FILED**

**November 21, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Edgar W. Friedrichs, Jr., by counsel Jason D. Parmer, appeals the Circuit Court of Fayette County's March 27, 2017, order denying his petition for writ of habeas corpus following his conviction by a jury of first-degree murder and death of a child by a custodian. Ralph Terry, Superintendent, Mount Olive Correctional Complex, by counsel Julianne Wisman, filed a response in support of the circuit court's order.[1] Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in denying him habeas relief because the State failed to comply with the mandatory joinder rule contained in Rule 8 of the West Virginia Rules of Criminal Procedure when he was indicted in the underlying criminal proceeding.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2003, petitioner was indicted on one count of first-degree murder and one count of death of a child by a custodian. Both crimes were related to the death of twelve-year-old J.B.[2] Petitioner was J.B.'s elementary school principal and developed a relationship with him in

---

[1]Effective July 1, 2018, the positions formerly designated as "wardens" are now designated "superintendents." *See* W.Va. Code § 15A-5-3. Moreover, petitioner originally listed David Ballard as respondent in this action. Mr. Ballard is no longer the superintendent at Mt. Olive Correctional Complex. Accordingly, the appropriate public officer has been substituted pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure.

[2]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va.

(continued . . . )

1

that capacity, which included taking the child on trips to his cabin on the New River. In November of 1997, J.B. and his friend, M.P., accompanied petitioner on an overnight trip to his cabin. Later testimony from M.P. established that petitioner played a game with the boys whereby he directed them to drink juice he prepared for them as quickly as they could. According to M.P., the juice had a chalky, bitter aftertaste. M.P. testified that petitioner gave J.B. an unidentified pill. M.P. also testified that, as he was falling asleep that night, he saw petitioner, after removing his pants, walk into the room where J.B. was sleeping and then heard petitioner and J.B. talking. M.P. said that the next morning, petitioner woke him because J.B. had vomited and was unresponsive. According to M.P., petitioner instructed him to find a telephone to call for help. Ultimately, J.B. died.

Initial examinations, including an autopsy by the West Virginia Chief Medical Examiner, concluded that J.B.'s death was suspicious based upon the presence of amitriptyline[3] in J.B.'s vomit and blood, among other evidence. However, investigators were unable to determine how J.B. ingested the drug, as neither the victim nor any member of his family had a prescription for it. Additionally, investigators reviewed petitioner's insurance records and found no prescription for the drug. Investigators did find a partially-wet cardboard box in the New River near petitioner's cabin on the night of the murder with markings on the side indicating the contents were toxic. However, as the autopsy did not indicate that J.B. had been poisoned, the box was not investigated further. As a result of the lack of evidence indicating that J.B.'s death was a murder, the State had no associated charges to present to a grand jury.

In 2001, petitioner was indicted for sexually abusing two other teenage boys, including the witness to J.B.'s death, M.P. Following a jury trial, petitioner was convicted of one count of first-degree sexual abuse and three counts of sexual abuse by a custodian in January of 2002.

In 2002, a new sheriff was elected in Fayette County who had prior experience as an investigator and "aggressively reopened and personally led" a renewed investigation into J.B.'s death beginning in March of 2002. It wasn't until the renewed investigation that it was discovered that the cardboard box found in the river near petitioner's cabin on the night of the murder contained a packing slip for chloroform. The investigation then located invoices showing that petitioner purchased several liters of chloroform that had been shipped in the cardboard box. Additionally, more detailed examination of J.B.'s boxer shorts revealed the presence of semen. Further testing indicated that a stain on J.B.'s boxer shorts contained a mixture of two individuals' DNA. Comparing the DNA to that of petitioner, J.B., and M.P., investigators were

---

254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[3]"Amitriptyline is used to treat symptoms of depression. It works on the central nervous system . . . to increase levels of certain chemicals in the brain." Mayo Clinic, https://www.mayoclinic.org/drugs-supplements/amitriptyline-oral-route/description/drg-20072061 (last visited Oct. 31, 2018).

able to conclude that M.P. could be excluded from the DNA present on the boxer shorts. Further, the investigator who conducted the DNA testing testified that "[Petitioner's DNA] is present in that stain, or [that she] could not exclude [petitioner] from being in that stain. . . ." Further, the investigator testified that the chances of someone other than petitioner or J.B. contributing to the stain were 1 in 350,000. Additionally, J.B.'s autopsy was revisited and the presence of chloroform was found in his blood. Ultimately, this renewed investigation into J.B.'s death resulted in petitioner's indictment in May of 2003 for one count of first-degree murder and one count of death of a child by a custodian.

In June of 2003, petitioner filed a motion to dismiss the indictment for violation of Rule 8(a)(2) of the West Virginia Rules of Criminal Procedure, which requires mandatory joinder of charges that are "based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. . . ." According to petitioner, these crimes were related to a common scheme or plan of crimes as set forth in the 2001 indictment. In November of 2004, the circuit court held a hearing on petitioner's motion to dismiss. The circuit court found that, at the time the indictment was issued in petitioner's prior criminal case, the prosecutor did not have sufficient knowledge, evidence, or other information concerning the victim's death to proceed before a grand jury. As such, the circuit court found that the allegations contained in the later indictment were not a part of any common scheme or plan in relation to the earlier crimes.

Petitioner's jury trial commenced in July of 2005. Ultimately, he was convicted of both counts. The circuit court then sentenced him to a term of life, without mercy, for his conviction of first-degree murder and a term of forty years for his conviction of death of a child by a custodian. These sentences were ordered to run concurrently to one another but consecutively to the sentences petitioner was serving from his earlier criminal proceeding.

In February of 2010, petitioner filed a motion pursuant to Rule 35 of the Rules of Criminal Procedure seeking a corrected sentence on the basis that his sentences were multiple punishments for the same crime and, thus, a violation of the double jeopardy clauses of the West Virginia and United States Constitutions. The circuit court held a hearing on this motion and denied the same. Petitioner then appealed the denial to this Court, which refused the appeal.

Thereafter, in July of 2011, petitioner filed a pro se petition for writ of habeas corpus. After appointment of counsel, petitioner filed an amended petition which set forth several grounds for relief, including an allegation that the indictment at issue violated the mandatory joinder rule set forth in Rule 8 of the Rules of Criminal Procedure. In September of 2016, the circuit court held an omnibus evidentiary hearing, after which it denied petitioner habeas relief. This appeal followed.

Our review of the circuit court's order denying petitioner's petition for a writ of habeas corpus is governed by the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and

3

questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009).

On appeal to this Court, petitioner challenges only the circuit court's ruling in regard to his claim that the State violated the mandatory joinder rule set forth in Rule 8(a)(2) of the Rules of Criminal Procedure, which sets forth as follows:

> *Mandatory joinder*. – If two or more offenses are known or should have been known by the exercise of due diligence to the attorney for the state at the time of the commencement of the prosecution and were committed within the same county having jurisdiction and venue of the offenses, all such offenses upon which the attorney for the state elects to proceed shall be prosecuted by separate counts in a single prosecution if they are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan, whether felonies or misdemeanors or both. Any offense required by this rule to be prosecuted by a separate count in a single prosecution cannot be subsequently prosecuted unless waived by the defendant.

According to petitioner, the State had a duty to indict him for the crimes at issue herein – first-degree murder and death of a child by a custodian – in 2001 when it indicted him for the sexual offenses at issue in the earlier proceedings. According to petitioner, the State "knew or should have known by the exercise of due diligence" that he could have been charged for J.B.'s death at that time. He also argues that the offenses charged in the two indictments were part of a common scheme. For the reasons set forth below, we do not agree.

First, it is clear that the State did not have a duty to join the offenses from petitioner's various criminal matters because it did not know, nor should it have known, that petitioner could be charged for J.B.'s death at the time it prosecuted him for the earlier sex crimes against other minor children. In regard to mandatory joinder, this Court has held as follows:

> "Rule 8(a) of the West Virginia Rules of Criminal Procedure compels the prosecuting attorney to charge in the same charging document all offenses based on the same act or transaction, or on two or more acts or transactions, connected together or constituting parts of a common scheme or plan, whether felonies, misdemeanors or both, provided that the offenses occurred in the same jurisdiction, and the prosecuting attorney knew or should have known of all the offenses, or had an opportunity to present all offenses prior to the time that jeopardy attaches in any one of the offenses." Syllabus Point 3, *State ex rel. Forbes v. Canady*, 197 W.Va. 37, 475 S.E.2d 37 (1996).

Syl. Pt. 1, *State ex rel. Blaney v. Reed*, 215 W.Va. 220, 599 S.E.2d 643 (2004). Here, the prosecution simply did not have sufficient evidence upon which to indict petitioner for J.B.'s murder at the time of his first trial related to the sexual crimes against the other minor children. Indeed, as the circuit court below found in denying petitioner habeas relief, key evidence linking

petitioner to J.B.'s murder was not discovered until after the conclusion of his first trial, including petitioner's purchase of chloroform, the DNA testing of J.B.'s boxer shorts, and the presence of chloroform in J.B.'s blood. Thus, the record shows that the prosecution did not know or have reason to know of the second offenses at the time the first case was tried.

Petitioner argues, however, that the State had some of this evidence, such as the packing slip related to his purchase of chloroform, in its possession when he was indicted in the first criminal proceeding. As such, petitioner argues that law enforcement should have exercised due diligence in its investigation and the failure to uncover these facts should be attributed to the prosecuting attorney for purposes of determining whether the prosecution should have known of these additional crimes. We do not agree. As the circuit court correctly found, "there was no 'case' for the Fayette County Prosecuting Attorney to present to the September 2001 Term of the Fayette County Grand Jury" in regard to the crimes committed against J.B. Indeed, the record shows that the State had a duty pursuant to Rule 3.8(a) of the West Virginia Rules of Professional Conduct not to indict petitioner at that point, given the lack of evidence. Rule 3.8(a) clearly states that "[t]he prosecutor in a criminal case shall . . . refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause." Accordingly, we find that petitioner is entitled to no relief in this regard.

Moreover, we find that petitioner is entitled to no relief on his claim that mandatory joinder was required because the crimes from the two separate prosecutions were part of a common scheme. In support of this argument, petitioner relies on a prior case wherein this Court upheld the permissive joinder of sex offenses that occurred eleven years apart because they were "of the same or similar character." *State v. Rash*, 226 W.Va. 35, 43, 697 S.E.2d 71, 79 (2010). According to petitioner, this Court found joinder was appropriate in *Rash* because the charges all involved "inappropriate sexual contact with a minor[,]" "[t]he alleged victims were both young prepubescent females[,]" and the defendant in that matter "used his position of trust as a family member to take advantage of both victims. . . ." *Id*. Further, petitioner argues that his case is similar to *Rash* in that "[t]he allegations are susceptible to the analysis that defendant's common scheme or plan was to arouse or gratify his sexual desires through the exploitation of young children." *Id*. Petitioner argues that because the State presented evidence under Rule 404(b) of the West Virginia Rules of Evidence of petitioner's lustful disposition toward children and his use of a game wherein he encouraged children to drink juice containing sedatives for purposes of sexually abusing them, it established that all the acts at issue were part of a common scheme that necessitated mandatory joinder. We do not agree.

Importantly, petitioner's reliance on *Rash* is misplaced, as that case concerned permissive joinder of prosecution under Rule 8(a)(1), not mandatory joinder under Rule 8(a)(2). Rule 8(a)(1) simply permits that "[t]wo or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character." While it may be true that the crimes at issue in petitioner's appeal are of the same or similar character as those prosecuted in the earlier trial, petitioner simply has not established that they were part of a common scheme such that mandatory joinder required they be tried together. Given that petitioner's case arises under the mandatory joinder rule set forth in Rule 8(a)(2), *Rash* is simply inapplicable. As such, we find that he is entitled to no relief.

5

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 21, 2018

**CONCURRED IN BY:**

Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment

**DISQUALIFIED:**

Chief Justice Margaret L. Workman